1

2

3

4

5

6

7

8

9                      UNITED STATES DISTRICT COURT

10                     EASTERN DISTRICT OF CALIFORNIA

11

12    DAVID BENNETT,                      CASE No. 1:16-cv-1749-AWI-MJS (PC)

13            Plaintiff,                  **FINDINGS AND RECOMMENDATION TO
                                          DISMISS FIRST AMENDED COMPLAINT**
14       v.                               **WITHOUT LEAVE TO AMEND FOR
                                          FAILURE TO STATE A CLAIM**
15    DEBBIE ASUNCION, et al.,
                                          (ECF NO. 24)
16            Defendants.
                                          **FOURTEEN (14) DAY OBJECTION
17                                        DEADLINE**

18

19

20        Plaintiff is a state prisoner proceeding pro se and in forma pauperis in a civil rights

21    action pursuant to 42 U.S.C. § 1983.

22        Plaintiff's original pleading was previously dismissed with leave to amend for

23    failure to state a claim. (ECF No. 6) His first amended complaint (ECF No. 24) is before

24    the Court for screening.

25    **I.    Screening Requirement**

26        The Court is required to screen complaints brought by prisoners seeking relief

27    against a governmental entity or officer or employee of a governmental entity. 28 U.S.C.

28

§ 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### III. Plaintiff's Allegations

Plaintiff is currently incarcerated at California Substance Abuse and Treatment Facility ("CSATF") in Corcoran, California and complains of events that occurred there. He names the following individuals as Defendants: (1) Debbie Asuncion, CSATF Warden; (2) Stu Sherman, CSATF Assistant Warden; (3) Denning, CSATF Captain; (4) Rivas, CSATF Correctional Officer; (5) Jerry Brown, California Governor; (6) Olivas, CSATF Correctional Officer; and (7) Thierry, CSATF Correctional Officer.

Plaintiff's claims may be fairly summarized as follows:

Plaintiff is an Enhanced Outpatient Program ("EOP") inmate. Plaintiff's brings assorted allegations regarding how he and other EOP inmates are treated at CSATF.

Plaintiff's main allegations concern the number of yard hours that EOP inmates are allowed. Plaintiff alleges that rules that separate EOP inmates from the general population ("GP") due to safety concerns are discriminatory and violate EOP inmates' rights to yard access and exercise. On July 14, 2016, Plaintiff and other EOP inmates filed a group 602 inmate grievance concerning the lack of yard opportunities for EOP inmates. Plaintiff claimed that the separation policy is no longer needed because the GP inmates have been cleared from the yard schedule entirely, thereby negating any safety issues. This appeal was denied.

The yard policy also requires lockdowns and modified programs that restrict EOP inmates to their cells for long periods of time. It also limits Plaintiff's law library access to less than two hours per week, which is not enough time since all the EOP inmates are trying to use the library and access other yard programs. Additionally, programming for EOP inmates ends whenever an EOP inmate is escorted to a mental health treatment crisis bed. At that point the other EOP inmates are placed into lockdown when they should be allowed to continue to access programming. This happens nearly every day. Additionally, EOP inmates who take heat sensitive medication are restricted to their cells when the weather is hot and there is a heat alert.

At some time after the appeal was filed another inmate was attacked by non-party Sergeant Gomez in retaliation for filing the group grievance. Defendant Rivas did not intervene. Plaintiff was told he would be next if he did not stop filing grievances. At some point Plaintiff and other EOP inmates were threatened with additional criminal charges if they continued to complain about the yard policy.

Plaintiff also brings additional allegations regarding conditions at CSATF for himself and other EOP inmates. CSATF is gaining money for disability programs, but these funds are not being spent on EOP inmates or disability programs. CSATF is failing to deliver the medical services it is required to deliver and healthcare providers are improperly trained.

Some counselors, including non-party Recreational Counselor Paul Thobe, mistreat the EOP patients and tell them that they have no rights. Thobe has given Plaintiff frivolous rules violation reports in retaliation for Plaintiff expressing himself. Plaintiff was later cleared.

Plaintiff also raises issues that have occurred since the filing of this action: On March 5, 2017, Defendants Rivas, Olivas, and Thierry were handling the outgoing legal mail. They saw that Plaintiff had filed this action and began to harass Plaintiff. Olivas and non-party Nurse Young threatened Plaintiff with additional criminal charges if he did not stop "pushing paper." Plaintiff asked to speak to the head sergeant. Defendant Rivas cuffed Plaintiff and whispered, "Fuck around and get killed. Why are you shaking? Are you scared?" Plaintiff requested to have the cuffs removed. Defendant Rivas beat Plaintiff and Thierry and Olivas did not respond to Plaintiff's cries for help.

Plaintiff brings claims under the Eighth Amendment, the Americans with Disabilities Act ("ADA"), Fourteenth Amendment, First Amendment retaliation, 18 U.S.C.S. § 245-246, 42 U.S.C.S. § 14141, the Freedom of Information Act, and various state law claims. Plaintiff seeks damages and declaratory and injunctive relief.

## IV. Analysis

### A. Exhaustion of Administrative Remedies

Plaintiff was advised in this Court's previous screening order that his claims were subject to dismissal under the Prison Litigation Reform Act ("PLRA") see 42 U.S.C. § 1997e(a) if he did not indicate that either his administrative remedies were unavailable or that he had exhausted his available administrative remedies. (See ECF No. 6.)

Although exhaustion is required under the PLRA, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 549 U.S. at 216. Further, dismissal at the screening stage is only appropriate "in those rare cases where a failure to exhaust is clear from the face of the complaint." Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014). In addition, certain circumstances could make exhaustion effectively unavailable. See Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010); Ross v. Blake, 136 S. Ct. 1850, 1859-60 (2016).

Plaintiff appears to be claiming both that he did exhaust and that exhaustion was effectively unavailable to him. First, Plaintiff states that exhaustion was unavailable because of "official patterns and practices misrepresenting the appeal system by way of trickery and waiving the appeal." (ECF No. 24 at 12-13.) Plaintiff adds, "The first level response made a clear lie, and waive Plaintiff from raising his claim by destroying his claim so defendant(s) could say Plaintiff is appealing something else. . . The Defendant [sic] made a false hearing/claim on what the appeal was about." (Id. at 14.) Plaintiff seems to be alleging that prison administrators deliberately misunderstood the contents of the group grievance in order to deny it and thus prevent the exhaustion of administrative remedies. These allegations are sufficient at the pleading stage to suggest that exhaustion was effectively unavailable. See Ross, 136 S. Ct at 1859 (noting that administrative remedies could be unavailable if prison officials "thwart" a prisoner "from taking advantage of a grievance process through machination, misrepresentation, or intimidation.").

1    Plaintiff additionally attaches to the complaint a grievance that was granted in
2  relation to the prison yard claim. (ECF No. 24 at 29.) An administrative grievance where
3  relief was granted may exhaust a prisoner's remedies as no further relief may be
4  available. Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005). From the amended
5  complaint it is not clear when this grievance was filed or resolved. If it was granted
6  before Plaintiff filed this action, then it could serve to exhaust his administrative
7  remedies. Thus, from the face of the complaint, it is not clear that Plaintiff has failed to
8  exhaust.

9    Plaintiff's amended complaint, therefore, contains sufficient information, at the
10 pleading stage, to proceed. This Court makes no finding regarding whether Plaintiff has
11 exhausted his administrative remedies. However, on the facts presented, dismissal on
12 exhaustion grounds is not warranted, and Plaintiff's claims will be considered below.

13    **B.    Pleading Defects**

14        **1.    Non-parties**

15    Plaintiff's complaint contains allegations against various individuals who are not
16 named in the caption of the complaint, including, among other unnamed individuals,
17 Nurse T. Young, Sergeant Gomez, Correctional Officer Villareal, and Recreational
18 Therapist Paul Thobe.

19    Rule 10(a) of the Federal Rules of Civil Procedure requires that each defendant
20 be named in the caption of the complaint. A complaint is subject to dismissal if "one
21 cannot determine from the complaint who is being sued, [and] for what relief. . . ."
22 McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996). As these individuals are not
23 named in the caption, the Court is unable to determine whether Plaintiff intends to
24 proceed against then.

25    Accordingly, the Court will not herein address allegations against Young, Thobe,
26 Gomez, Villareal, and other individuals not named in the caption of the complaint.

27

28

### 2. Unrelated Claims

Plaintiff brings claims that arise from events unrelated to his original allegations and against Defendants not named in his previous complaint.

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); <u>Owens v. Hinsley</u>, 653 F.3d 950, 952 (7th Cir. 2011); <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are common questions of law or fact. Fed. R. Civ. P. 20(a)(2); <u>Coughlin v. Rogers</u>, 130 F.3d 1348, 1351 (9th Cir. 1997); <u>Desert Empire Bank v. Insurance Co. of North America</u>, 623 F.2d 1371, 1375 (9th Cir. 1980). Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff's inclusion in this action of claims against Defendants Rivas, Olivas and Thierry regarding the March 2017 incident does not comply with the rules regarding joinder of claims. These claims arise out of an incident of excessive force and retaliation that occurred after Plaintiff filed this action. They are unrelated to Plaintiff's original allegations regarding the yard policy at CSATF. Plaintiff may not pursue unrelated claims against unrelated defendants in this action. Furthermore, these claims are wholly new in this amended complaint and are alleged to have occurred after Plaintiff initially filed this action. Although Plaintiff was given the opportunity to amend, it was not for the purposes of adding new claims. <u>George</u>, 507 F.3d at 607.

Plaintiff may not bring claims regarding the March 2017 incident of excessive force and First Amendment retaliation. They are unrelated to his original complaint and

are not properly joined in this action. If Plaintiff wishes to pursue these claims, he should do so in a separate action.[1]

The Court will review herein only those allegations related to Plaintiff's original complaint, namely those regarding CSATF policies towards EOP inmates and any retaliation that occurred against Plaintiff because of the filing of the group appeal.

### C. Official Capacity Claims

Plaintiff brings claims against Defendants in their individual and official capacities.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). Therefore, Plaintiff's claims for damages against Defendants in their official capacities are barred. In addition, because Plaintiff's claims for damages necessarily entail a determination on whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. Rhodes v. Robinson, 408 F.3d 559, 566 n.8 (9th Cir. 2005). These defects cannot be cured through amendment.

However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003), or suits for declaratory or injunctive relief brought against state officials in their official capacities, Austin v. State Indus. Ins. System, 939 F.2d 676, 680 fn.2 (9th Cir. 1991). A plaintiff pursuing defendants in their official capacities must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985). That is, the plaintiff must establish an affirmative causal link between the policy at issue and the alleged constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385,

---

[1] As Plaintiff alleges that this incident occurred in March 2017 he would not be prejudiced by the statute of limitations in bringing a separate suit based on these allegations. See Rush v. Sport Chalet, Inc., 779 F.3d 973, 975 (9th Cir. 2015).

391-92 (1989); <u>Van Ort v. Estate of Stanewich</u>, 92 F.3d 831, 835 (9th Cir. 1996); <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1473-74 (9th Cir. 1992). "A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." <u>Hartmann v. California Dep't of Corr. & Rehab.</u>, 707 F.3d 1114, 1127 (9th Cir. 2013) (citing <u>Hafer</u>, 502 U.S. at 25.) "Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." <u>Id.</u> at 1127 (citing <u>Los Angeles County v. Humphries</u>, 562 U.S. 29, 35-36 (2010)).

Here Plaintiff challenges CSATF's official policies related to yard segregation, lockdowns, and modified programs regarding EOP inmates. He seeks injunctive relief and names as Defendants Debbie Asuncion, CSATF Warden, Stu Sherman, CSATF Assistant Warden, and Jerry Brown, California Governor. These individuals would be able to appropriately respond to any injunctive relief that Plaintiff may be entitled to. Therefore, these Defendants, and only these Defendants, may be sued in their official capacities in this action. Nonetheless, as discussed below, the claims against them are not cognizable.

### D. Class Actions

Plaintiff appears to be bringing claims based on ongoing and settled class actions relating to the treatment of prisoners in California prisons: <u>Coleman v. Brown</u>, case no. 2:90-CV-520-KJM-DB (E.D. Cal); <u>Hecker v. California Department of Corrections and Rehabilitation</u>, case no. 2:05-CV-2441-KJM-DAD (E.D. Cal.); <u>Mitchell v. Cate</u> case no. 2:08-CV-01196-TLL-EFB (E.D. Cal.); and <u>Plata v. Schwarzenegger</u> case no. C-01-1351 TEH (N.D. Cal., filed Apr. 5, 2001). To address Plaintiff's claims, the Court judicially notices these cases and their dockets. <u>See</u> Fed. R. Evid. 201(c)(1).

These class actions have resulted in various settlements, injunctions, and remedial plans that have resulted from the litigation of the aforementioned class actions.

Plaintiff is alleging that policies enacted at CSATF as they relate to EOP inmates violate these court orders.

### 1. Enforcing Court Orders

"A district court retains jurisdiction to enforce its judgments." Hook v. Ariz., Dep't of Corr., 972 F.2d 1012, 1014 (9th Cir. 1992) (citing City of Las Vegas, Nev. v. Clark County, Nev., 755 F.2d 697, 701 (9th Cir. 1985); see also Skelly v. Dockweiler, 75 F. Supp. 11, 17 (S.D.Cal.1947) (noting that a court may choose not to exercise its jurisdiction when another court having jurisdiction over the same matter has entertained it and can achieve the same result).

Accordingly, Plaintiff cannot seek relief here based on violations of injunctions, settlements, remedial plans, or other court orders provided in any of the class actions. A claim for a violation of those orders requires enforcement in the court that issued the order. See Hook, 972 F.2d at 1014. Plaintiff cannot seek here any enforcement or modification of these court orders.

### 2. Plaintiff as a Class Member

Additionally, Plaintiff may be barred from bring claims that are duplicative to those brought in class actions to which he is a member.

In general, "a judgment in a properly entertained class action is binding on class members in any subsequent litigation." Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 874 (1984). Indeed, the "central purpose of each of the various forms of class action is to establish a judgment that will bind not only the representative parties but also all nonparticipating members of the class certified by the court." 18A Wright et al., Federal Practice and Procedure § 4455, at 448 (2d ed. 2002).

However, a particular judge who entered a judgment does not have exclusive jurisdiction over any claims that may in some way relate to the judgment. Krug v. Lutz, 329 F.3d 692, 696 (9th Cir. 2003). A plaintiff may proceed even when a class member of a binding judgment when he alleges "specific issues" that were not discussed in the judgment. Id.

Additionally, the Ninth Circuit has found that when prisoners have brought claims for injunctive relief that relate to pending class actions of which those prisoners are a member, but their claims go beyond or are independent of the allegations and relief prayed for in the class action suit, then their claims are not subject to dismissal. See e.g., Pride v. Correa, 719 F.3d 1130, 1133-34 (9th Cir. 2013); (reversing the dismissal of claims that related to a pending class action when the plaintiff's "claim for injunctive relief relate[d] solely to his individual need for medical treatment" rather than the class concerns of the suit); Crawford, 599 F.2d at 893 (upholding the dismissal of claims that were identical to a pending class action suit of which a pro se prisoner plaintiff was a member but allowing plaintiff to proceed on allegations that went beyond the class action and asked for different relief); see also Frost v. Symington, 197 F.3d 348, 359 (9th Cir. 1999) (remanding for a determination of whether a pending "class action involv[es] the same issues raised by [plaintiff]"). However, when a class member brings claims that are duplicative of a pending class action, a district court may dismiss "those portions of [the] complaint which duplicate the [class action's] allegations and prayer for relief." Crawford v. Bell, 599 F.2d 890, 893 (9th Cir. 1979). If the allegations and relief sought are duplicative of the class action, "avoidance of concurrent litigation and potentially inconsistent results justifies dismissal." Pride, 719 F.3d at 1137; see e.g., Gary v. Hawthron, 06-CV-1528 WQH (PCL), 2007 U.S. Dist. LEXIS 70110, 2007 WL 2781098, at *2 (S.D. Cal. Sept. 19, 2007); *accord* Jacobson v. Schwarzenegger, 357 F. Supp. 2d 1198, 1201, 1207-12 (C.D. Cal. 2004).

The Court will now consider the extent to which these settled or pending class actions preclude Plaintiff's ability to proceed on claims he has alleged in this amended complaint.

### a. **Coleman v. Brown**

On April 23, 1990, California prisoners filed a class action civil rights complaint regarding inadequate mental health care at prisons in California. See Coleman v. Wilson, 912 F. Supp. 1282, 1293 (E.D. Cal. 1995).

The court certified the <u>Coleman</u> class of prisoners "consisting of all inmates with serious mental disorders who are now or who will in the future be confined within the California Department of Corrections (except the San Quentin State Prison, the Northern Reception Center at Vacaville and the California Medical Facility—Main at Vacaville)." <u>Id.</u> (quotations omitted). The court found that the lack of mental health care, the policies on involuntary medication, mechanical restraints, segregation of mentally ill prisoners and the use of tasers and 37mm guns violated the Eighth Amendment of the Constitution. <u>Id.</u> at 1315, 1319-23.

The <u>Coleman</u> court appointed a Special Master to develop and monitor court ordered injunctive relief and report back to the court regarding the implementation of the remedial plan. <u>Id.</u> at 1297, 1324. The remedial plan identified several "critically important" goals necessary to remedy the Eighth Amendment violation. <u>Coleman v. Brown</u>, 938 F. Supp. 2d 955, 969 (E.D. Cal. 2013). These included improving suicide prevention programs, changing policies relating to the segregation of mentally ill prisoners, and completing the construction of additional mental health treatment spaces and beds. <u>Id.</u> The <u>Coleman</u> case is still ongoing and the remedial plan is still being implemented and monitored. <u>See, e.g.</u>, <u>Coleman</u> (ECF No. 5795) (defendants' response updating the court and the Special Master on the ongoing implementation of the remedial plan).

Plaintiff's claims regarding the yard policy, lockdowns, and cell restriction are precluded by the pending Coleman class action and should be dismissed. Plaintiff's allegations about these policies are not specific to his individual treatment. He alleges generally that the policies at CSATF regarding the segregation of EOP inmates, as well as policies relating to lockdowns and modified programming that restrict EOP inmates to their cells are in violation of the Eighth Amendment. As such they are duplicative of the allegations and relief in the pending <u>Coleman</u> class action which seeks to systemically change California Department of Corrections and Rehabilitation ("CDCR") mental health treatment policies. <u>Coleman</u>, 938 F. Supp. 2d at 969. Plaintiff's claims do not go beyond

the allegations and relief requested in <u>Coleman</u> and therefore are not cognizable. <u>See</u> <u>Pride</u>, 719 F.3d at 1134; <u>Crawford</u>, 599 F.2d at 893.

To the extent that Plaintiff's claims challenge policies at CSATF regarding yard segregation and mental health provision for EOP inmates generally they are subject to dismissal. This defect is not capable of cure through amendment and thus leave to amend should be denied and they should be dismissed.

### b.      Hecker v. CDCR

On October 20, 2006, California state prisoners filed a class action complaint, against CDCR and several state officials alleging violation of ADA, and the Rehabilitation Act of 1973. <u>Hecker</u>, 2:05-CV-2441-KJM-DAD (ECF No. 35). Plaintiffs sought to represent a "class of all present and future California inmates of the CDCR with psychiatric conditions that are disabilities as defined by the ADA and the Rehabilitation Act who are excluded and/or screened out from any prison program, service, or activity on the basis of their assignment to or participation in the MHSDS program, including the EOP and the CCCMS." <u>Id.</u> at para 193. Their claims were based on CDCR's "deni[al] [of] equal access to a broad range of prison programs, services, and activities," such as "disability-based denial of access to recreational programs and facilities; . . . to religious programs, including church services and bible study; and . . . to other programs, services, and activities, including the law library, COCF placements, and the Substance Abuse Program ("SAP") and other drug treatment programs." (<u>Id.</u> at paras 72, 199-210.) Plaintiffs requested declaratory and injunctive relief. (<u>Id.</u> at paras 211-16.)

In light of the Special Master appointed in <u>Coleman</u> to resolve CDCR's mental health program shortcomings, <u>Hecker</u> plaintiffs were referred to the Special Master for resolution under the remedial plan. <u>See</u> <u>Hecker v. California Department of Corrections</u> <u>and Rehabilitation</u>, 2007 U.S. Dist. LEXIS 18211, 2007 WL 836806, at *1 (E.D. Cal. Mar. 15, 2007). This resulted in a settlement under which the claims raised by <u>Hecker</u> plaintiffs would be addressed under the <u>Coleman</u> remedial plan, but released state employees from "all claims, past, present and future, known or unknown, that arise or

could arise from the facts alleged in the complaint." <u>Hecker</u>, No. CIV S-05-2441 KJM DAD P (ECF No. 148).

As an EOP inmate, Plaintiff is a member of the <u>Hecker</u> class. <u>Id.</u> (ECF No. 148-1 at para 19.) Plaintiff alleges that the prison yard program and policies regarding lockdowns at CSATF violates the ADA because it discriminates against EOP inmates and provides them with unequal access to the law library, the yard, and other prison programs. Thus, Plaintiff's claims are essentially the same as those raised in <u>Hecker</u>. (<u>See</u> <u>id.</u> at paras 72, 199-210.) Because the <u>Hecker</u> settlement released CDCR from "all claims, past, present and future, known or unknown, that arise or could arise from the facts alleged in the complaint," Plaintiff, as a class member, is precluded from seeking relief based on any allegations raised in <u>Hecker</u> that relate to Plaintiff as a member of that class. Plaintiff's claims, therefore, are not cognizable and are not capable of cure through amendment and should be dismissed.

### c. <u>Mitchell v. Cate</u>

On May 30, 2008, an action was filed to challenge allegedly race-based lockdowns and "certified a class consisting of all male prisoners who are now, or will in the future be, subjected to CDCR's modified program and lockdown policy." <u>Mitchell v. Cate</u>, No. 2:08-CV-01196, 2014 U.S. Dist. LEXIS 100714, at *34 (E.D. Cal. July 21, 2014). Plaintiffs sought an injunction against implementing race-based lockdowns, and ensuring that class members are not deprived of outdoor exercise for excessive periods of time during lockdowns and modified programs because these policies violated the Equal Protection Clause and constituted cruel and unusual punishment. <u>Mitchell v. Cate</u>, No. 2:08-CV-01196-TLN-EFB, 2015 U.S. Dist. LEXIS 137893, at *10 (E.D. Cal. Oct. 7, 2015). A settlement was agreed that CDCR would 1) no longer implement any lockdowns or modified programs based on race, and 2) would implement a policy providing for outdoor exercise during long modified programs. <u>Id.</u> The case has been terminated based on the terms of the settlement. <u>See</u> <u>Mitchell</u>, No. 2:08-CV-01196-TLN-EFB (ECF No. 393).

Plaintiff, as a male CDCR inmate who is subject to lockdowns is a member of the Mitchell class. Mitchell, No. 2:08-CV-01196 2014 U.S. Dist. LEXIS 100714 at *34. Plaintiff's is alleging that EOP inmates are restricted to their cells for excessively long periods of time during lockdowns and modified programs in violation of the Eighth Amendment. This is duplicative of the issues raised in Mitchell regarding the need for exercise during lockdowns. Mitchell, No. 2:08-CV-01196-TLN-EFB, 2015 U.S. Dist. LEXIS 137893, at *10. Plaintiff's claims in regard to the excessively long lockdowns and modified programs do not regard his individual needs and do not raise specific issues not raised in Mitchell, and thus should be dismissed.

### d. Plata v. Schwarzenegger

Plata v. Schwarzenegger was filed in 2001, and despite years of litigation, "serious constitutional violations in California's prison system . . . remain uncorrected." Brown v. Plata, 131 S. Ct. 1910, 1922 (2011). The class in Plata "consists of all prisoners in the custody of the [CDCR] with serious medical needs, except those incarcerated at Pelican Bay State Prison." Id. The Plata class seeks systemic reform of medical care in the California prisons for inmates with serious medical needs. Pride, 719 F.3d at 1136.

In 2002 an injunction was approved, however after the "State failed to comply with the injunction," and the district court appointed a receiver to oversee remedial efforts in the California prisons. Plata, 131 S. Ct at 1926. In August 2009, the district court found that the Plata litigation's remedial efforts including the Plata Stipulation and the receivership had failed to remedy the constitutional violations in California prisons. Coleman v. Schwarzenegger, CIV S-90-0520 LKK JFM P, 922 F. Supp. 2d 882, 2009 U.S. Dist. LEXIS 67943, 2009 WL 2430820 (E.D. & N.D. Cal. Aug. 4, 2009), at *25-26. The district court thus requested that a three-judge court convene to consider issuing a prisoner release order. Id. The three-judge court determined that: (1) crowding was the primary cause of the constitutional violations in Plata; and (2) no other relief, other than a prison release order, would remedy the constitutional violations. Id. at *29-115. The

United States Supreme Court affirmed the three-judge prison release order. <u>Plata</u>, 131 S. Ct.  Currently, the parties in <u>Plata</u> continue to litigate the three-judge prison release order.

In so far as Plaintiff is bringing claims regarding systemic relief for inmates in relation to their medical needs, Plaintiff is precluded by the <u>Plata</u> class action from bringing these issues here. As noted above Plaintiff's allegations are primarily related to the yard program as applied to EOP inmates. However, Plaintiff additionally brings general claims that healthcare policies at CSATF violate the terms of the <u>Plata</u> class action and the Eighth Amendment. He alleges that healthcare providers at CSATF are improperly trained, that funds allocated to healthcare programs are being improperly spent, and that CSATF has failed to provide sufficient medical services. These allegations are not specific to Plaintiff's individual needs and are duplicative of those in the pending <u>Plata</u> class action and should be dismissed. <u>See</u> <u>Pride</u>, 719 F.3d at 1134; <u>Crawford</u>, 599 F.2d at 893.

Based on the pending and settled class actions, Plaintiff's claims challenging policies at CSATF towards EOP inmates under the Eighth Amendment and the ADA should be dismissed. The Court will now consider the additional allegations that Plaintiff has brought.

**E.      Section 1983**

**1.      Linkage and Supervisory Liability**

Under Section 1983, a plaintiff bringing an individual capacity claim must demonstrate that each Defendant personally participated in the deprivation of his rights. <u>See</u> <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002). There must be an actual connection or link between the actions of the Defendants and the deprivation alleged to have been suffered by Plaintiff and claims cannot rely on a theory of *respondeat superior.* <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691, 695 (1978).

Each named Defendant must be linked with an affirmative act or omission that demonstrates a violation of Plaintiff's constitutional rights. <u>Iqbal</u>, 556 U.S. at 676. Liability

may be imposed on supervisory defendants under § 1983 only if the supervisor: (1) personally participated in the deprivation of constitutional rights or directed the violations or (2) knew of the violations and failed to act to prevent them. <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989). Defendants cannot be held liable for being generally deficient in their supervisory duties.

Under this standard Plaintiff fails to allege cognizable individual capacity claims against Defendants Asuncion, Denning, Sherman and Brown. Plaintiff does not allege that these Defendants personally participated in any of the events that he describes in his amended complaint. Plaintiff's allegation that he addressed his grievance letters to Defendant Asuncion is not sufficient to find that she engaged in an affirmative act or omission that either caused Plaintiff's constitutional deprivation or failed to prevent events that led to a constitutional deprivation. These claims are not cognizable and as these Defendants did not participate in the actions at issue further amendment appears futile. Accordingly individual capacity claims against these individuals should be dismissed.

### 2.  First Amendment Retaliation

Plaintiff brings claims that he was retaliated against for filing grievances in relation to the yard policy.[2]

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

---

[2] Plaintiff has made allegations against Young, Thobe, Rivas, Thierry and Olivas which, on the surface, describe adverse acts which allegedly resulted from Plaintiff's exercise of his rights.  However, as noted above, Thobe and Young are not named as defendants in the caption of the complaint, and so are not Defendants here and the claims against them are not considered here. (For that matter, those allegations were not raised in the original complaint, but were improperly added to the amended complaint.) The allegations against Rivas, Thierry and Olivas are misjoined – they are not related to the yard policy allegations giving rise to this case, they occurred after the filing of this action, and were improperly added to the amended complaint.

reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, pursuing a civil rights legal action is protected activity under the First Amendment. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

Plaintiff's allegations fail to state a claim. Plaintiff alleges that he witnessed an assault on another inmate in relation to the filing of group 602 and that Defendant Rivas did not intervene to stop the assault. However, Plaintiff may not bring claims on behalf of

other inmates. Plaintiff may only plead his own claims. See Simon v. Hartford Life, Inc., 546 F.3d 661, 664 (9th Cir. 2008) ("It is well established that the privilege to represent oneself pro se provided by [28 U.S.C.] § 1654 is personal to the litigant and does not extend to other parties or entities.") (citation omitted); Johns v. County of San Diego, 114 F.3d 874, 876 (9th Cir. 1997) ("constitutional claims are personal and cannot be asserted vicariously") (citation omitted); Fed. R. Civ. P. 23(a).

Plaintiff additionally alleges that he and other EOP inmates were threatened with criminal charges if they continued filing grievances. Plaintiff does not specify any individual who made these threats. Plaintiff may not bring claims generally, but must identify which individual deprived him of his constitutional rights. See Jones, 297 F.3d at 934. Thus, these allegations fail to state a claim.

Plaintiff was previously advised of the pleading standards regarding his First Amendment retaliation claims and nonetheless failed to cure them. It seems reasonable to assume that they are not capable of cure and leave to amend should be denied.

### 3.   Fourth Amendment

Plaintiff states he is bringing claim under "privacy". It is unclear what cause of action Plaintiff is wishing to pursue. He may be seeking to lodge a claim under the Fourth Amendment.

Plaintiff does not state a cognizable Fourth Amendment claim.  Although, the precise nature of his claim is unclear, Plaintiff, as a prisoner, is afforded only a limited right to privacy. The Supreme Court notes, that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." Hudson v. Palmer, 468 U.S. 517, 527-28 (1984). "The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." Id. at 526. The Ninth Circuit, however, has found that a limited Fourth Amendment right to be free of unreasonable search and seizure for incarcerated prisoners. Thompson v. Souza, 111

F.3d 694, 699 (9th Cir. 1997). Nothing alleged in Plaintiff's complaint suggests a violation of the limited privacy protections afforded to prisoners.

### 4.      Fourteenth Amendment Equal Protection Claim

Plaintiff appears to allege that the yard policy violates the equal protection clause of the Fourteenth Amendment because it treats EOP inmates differently from other inmates at CSATF.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). State prison inmates retain a right to equal protection of the laws guaranteed by the Fourteenth Amendment. Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Disability, including mental disability, is not a suspect class for Equal Protection purposes. Cleburne, 473 U.S. at 442; Pierce v. Cnty. of Orange, 526 F.3d 1190, 1225 (9th Cir. 2008). Claims brought under any theory must satisfy the intent requirement, that is, the plaintiff must show that some discriminatory purpose underlies the policy. See Village of Arlington Heights, 429 U.S. at 264-66; Pierce, 526 F.3d at 1225. In the prison setting, claims based upon the Equal Protection Clause are analyzed under the same Turner test that courts apply in assessing the constitutionality of claims under the First Amendment. Dixie v. Virga, No. 2:12-cv-2626-LKK-DAD, 2014 U.S. Dist. LEXIS 5892, at *30 (E.D. Cal. Jan. 15, 2014) (citing Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)). ("[W]hen a prison regulation impinges on inmates' constitutional

1  rights, the regulation is valid if it is reasonably related to legitimate penological
2  interests.")); see also Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).

3        Plaintiff's allegations fail to state a claim. Plaintiff states in his complaint that EOP
4  inmates are separated from GP inmates and that the purpose of the yard policy is the
5  security of the EOP inmates. First, Plaintiff fails to allege that EOP inmates were similarly
6  situated to the GP inmates. See Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th
7  Cir. 2005) ("[D]ifferent treatment of unlike groups does not support an equal protection
8  claim."); see also Wilson v. Nesbeth, 341 F. App'x 291, 293 (9th Cir. 2009) (upholding
9  the dismissal of an equal protection claim because plaintiff failed to allege that EOP
10 inmates were similarly situated to other inmates). Additionally, even assuming the policy
11 treats EOP inmates differently than other similarly situated inmates, institutional security
12 is a legitimate penological interest. See  Thornburgh v. Abbott, 490 U.S. 401, 402, 104 L.
13 Ed. 2d 459, 109 S. Ct. 1874 (1989) (An objective is legitimate if it is "expressly aimed at
14 protecting prison security, a purpose this Court has said is central to all other
15 correctional goals."). The policy separating EOP inmates from GP inmates in order to
16 protect more vulnerable inmates would be reasonably related to institutional security.
17 Accordingly this claim is not cognizable.

18       Plaintiff was previously advised of these pleading standards and has nonetheless
19 failed to allege a cognizable claim. It is reasonable to believe that Plaintiff is unable to
20 cure them and further amendment is futile. These claims should be dismissed.

21       **F.      18 U.S.C.S. § 245-246**

22       Plaintiff seeks to bring claims under 18 U.S.C.S. § 245-246 (Title I of the Civil
23 Rights Act of 1968). This is a federal criminal statute that does not provide for a private
24 civil right of action. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).
25 Accordingly, Plaintiff's claims are not cognizable. His civil rights challenges are properly
26 brought under §1983. These claims are not capable of cure through amendment and
27 should be dismissed.

28

1      **G.**    **42 U.S.C.S. § 14141**

2      Plaintiff states that he wishes to bring claims under 42 U.S.C.S. § 14141, which

3  was re-codified at 34 U.S.C. § 12601.

4      Title 34 of the United States Code § 12601, only provides for a civil cause of

5  action brought by the United States Attorney General. See 34 U.S.C. § 12601(b). It does

6  not provide a private right of action. See e.g., Gonzales v. City of Clovis, No. 1:12-CV-

7  00053-AWI, 2012 U.S. Dist. LEXIS 52614, 2012 WL 1292580, at *5 (E.D. Cal. Apr. 13,

8  2012); Ehringer v. California, No. 2:15-cv-0985 KJM AC P, 2016 U.S. Dist. LEXIS 25546,

9  at *9 (E.D. Cal. Feb. 29, 2016). Plaintiff cannot bring claims under this statute. This

10  defect is not capable of cure through amendment and these claims should be dismissed.

11      **H.**    **Freedom of Information Act**

12      Plaintiff states that he wishes to bring claims under the Freedom of Information

13  Act, which requires federal agencies to make certain information available to the public.

14  5 U.S.C. § 552. It is unclear what claim Plaintiff is wishing to pursue as nothing in his

15  complaint relates to federal information. This claim is not cognizable.

16      **I.**    **State Law Claims**

17      Plaintiff states that he wishes to bring claims regarding negligence, breach of

18  contract, assault and battery, false imprisonment, and intentional inflection of emotional

19  distress. It appears that Plaintiff is alleging torts protected under California state law.

20      This Court may exercise jurisdiction over a state law claim pursuant to 28 U.S.C.

21  § 1367(a), which states that in any civil action in which the district court has original

22  jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in

23  the action within such original jurisdiction that they form part of the same case or

24  controversy under Article III [of the Constitution]," except as provided in subsections (b)

25  and (c). "[Once judicial power exists under § 1367(a), retention of supplemental

26  jurisdiction over state law claims under § 1367(c) is discretionary." ACI v. Varian Assoc.,

27  Inc., 114 F.3d 999, 1000 (9th Cir. 1997). The Supreme Court has cautioned that "if the

28

1   federal claims are dismissed before trial, . . . the state claims should be dismissed as
2   well." <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726 (1966).

3       Here, Plaintiff has failed to allege a cognizable federal claim and therefore this
4   Court does not have jurisdiction over any state law claims. The Court will not exercise
5   supplemental jurisdiction over state law claims, even if Plaintiff states a claim under state
6   law, unless Plaintiff alleges a viable federal claim in an amended complaint. 28 U.S.C. §
7   1367(c)(3); <u>Parra v. PacifiCare of Az., Inc</u>., 715 F.3d 1146, 1156 (9th Cir. 2013).

8       Accordingly, the Court will not address Plaintiff's state law claims. As Plaintiff has
9   failed in his amended complaint to allege a cognizable federal claim, and as noted in this
10  screening order, the defects in his claims do not appear capable of cure through
11  amendment, Plaintiff's state law claims cannot be addressed herein and should be
12  dismissed for lack of jurisdiction.

13  **V.     Conclusion**

14      Plaintiff failed to allege any cognizable claims in his amended complaint. He was
15  previously advised of the pleading standards and failed to meet them. It thus appears
16  that further amendment would be futile and leave to amend should be denied.

17      Accordingly, it is HEREBY RECOMMENDED that the first amended complaint be
18  DISMISSED without leave to amend for failure to state a claim.

19      The findings and recommendation will be submitted to the United States District
20  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).
21  Within fourteen (14) days after being served with the findings and recommendation, the
22  parties may file written objections with the Court. The document should be captioned
23  "Objections to Magistrate Judge's Findings and Recommendation." A party may respond
24  to another party's objections by filing a response within fourteen (14) days after being
25  served with a copy of that party's objections. The parties are advised that failure to file
26  objections within the specified time may result in the waiver of rights on appeal.

27

28

*Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     March 20, 2018                    /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE